B. McKay Mignault, Chief Bankruptcy Judge
United States Bankruptcy Court

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| IN RE:<br><br>EASTERN VAULT COMPANY, INC., *et al.*,<br><br>Debtors. | CASE NO. 1:24-bk-10025<br><br>CHAPTER 7<br>Asset<br><br>JUDGE B. MCKAY MIGNAULT |
| ROBERT L. JOHNS,<br><br>Plaintiff,<br><br>v.<br><br>PHOENIX EXECUTIVE SERVICES, LLC,<br><br>Defendant. | ADVERSARY PROCEEDING<br>CASE NO. 1:26-ap-01002 |

**MEMORANDUM OPINION AND ORDER**

---

Pending is the *Defendant's Motion to Dismiss Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6)* [dkt. 10] (the "Motion"), filed by JS Held, LLC, as successor-in-interest to Phoenix Executive Services, LLC and Phoenix Management Services, LLC (collectively, the "Defendant"), and the response in opposition thereto [dkt. 15] (the "Response"), filed by Plaintiff Robert L. Johns (the "Trustee") in his capacity as Chapter 7 Trustee for the jointly administered estates of Eastern Vault Company, Inc. (collectively, the "Debtors"). The Trustee's Complaint [dkt. 1] asserts claims for avoidance and recovery of (1) preferential transfers under 11 U.S.C. §§ 547 and 550 and (2) fraudulent transfers under 11 U.S.C. §§ 548 and 550.

A hearing was held on the Motion on June 10, 2026 (the "Hearing"), at which the Court heard argument and took the Motion under advisement. All briefing having been completed,

the matter is now ripe for adjudication. For the reasons stated herein, the Motion is **DENIED in part and GRANTED in part**. The Court finds that the Complaint adequately pleads a preferential transfer claim under §§ 547 and 550, and the Motion is **DENIED** as to that claim. However, the Court finds that the fraudulent transfer claim under §§ 548 and 550 is insufficiently pleaded. Accordingly, the fraudulent transfer claim is **DISMISSED without prejudice**. If the Trustee wishes to pursue a fraudulent transfer claim, he must file a motion to amend the Complaint, along with a draft amended complaint, by no later than **fourteen (14) days** after entry of this Order.

**BACKGROUND**

The Trustee's Complaint alleges as follows. The Debtors filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code on April 9, 2024.[1] Compl. ¶ 6. Prior to filing, on August 23, 2023, the Debtors retained the Defendant to provide "'advisory and interim executive services,' including providing services as an interim Chief Financial Officer" through an individual named Patrick Bellot ("Bellot"). *Id.* ¶ 9. The Debtors' contract with the Defendant "provide[d] that Defendant was operating as an independent contractor and that Mr. Bellot, and other Defendant personnel, 'shall not be deemed to be officers or directors, representative[s] or insider[s] of the' Debtors." *Id.* ¶ 10. Despite this contractual language, the Defendant explicitly referred to Bellot as "an Officer" in communications with the Debtors. *Id.* Additionally, Bellot performed traditional duties of a chief financial officer. *Id.* ¶¶ 11, 14. For example, Bellot exercised control over "bank accounting and payments," "weigh[ed] in" on employee compensation, raises, and retention, and was "the main contact person for negotiating with LBC."

[1] The Debtors in these Chapter 7 cases are Eastern Vault Company, Inc., No. 1:24-bk-10025; MST Concrete Products, Inc., No. 1:24-bk-10026; Seminole Precast, LLC, No. 1:24-bk-10027; Dellinger Precast, Inc., No. 1-24-bk-10028; Winchester Building Supply Company, Inc., No. 1:24-bk-10029; and Precast Supply Co., Inc., No. 2:24-bk-20074. These cases have been consolidated for procedural purposes only. *See* No. 1:24-bk-10025, dkt. 391.

*Id.* ¶¶ 11-12.[2] Based on these allegations, the Trustee asserts that Bellot is an insider under the Bankruptcy Code, thus extending the preference period from 90 days from the petition date to one year under § 547(b)(4)(B). *Id.* ¶¶ 15-16, 18. The Trustee seeks to avoid and recover payments from the Debtors to the Defendant totaling $236,911.25 during the 90-day preference period, in addition to payments totaling $441,518.93 made between 90 days and one year from the petition date (collectively, the "Transfers"). *Id.* ¶ 18.

The Complaint further alleges that "some of the Transfers might be subject to defenses" under § 547(c). *Id.* ¶ 21. Based on information provided by the Defendant, "with the exception of one invoice, the invoices for the services provided were paid in less than three calendar days after receipt," which is "significantly faster" than payments to other vendors. *Id.* ¶¶ 22-23. Because the Defendant allegedly received payment materially faster than other vendors and "the accelerated payments were inconsistent with ordinary market terms," the Trustee "does not believe that Defendant is entitled to an ordinary course defense." *Id.* ¶ 24. The Trustee avers that when the Complaint was filed, he was "unable to locate any detailed invoices" for the Defendant's services. *Id.* ¶ 25.[3] The Trustee alleges that he has "conducted reasonable due diligence" and considered the "Defendant's known or reasonably knowable affirmative defenses" under § 547(c). *Id.* ¶ 26.

The Complaint asserts three claims for relief, including the avoidance of preferential transfers (Count I); the avoidance of fraudulent transfers (Count II); and the recovery

---

[2] As the Defendant points out, the acronym "LBC" is not defined in the Complaint. The Defendant does not appear to dispute that "LBC" is a reference to the Debtors' primary secured lender, LBC Credit Agency Services, LLC. *See* Mot. at 11 n.5.

[3] Counsel for the Trustee provided the Court and Defendant's counsel with a copy of an invoice during the Hearing. The Court declines to consider this document for purposes of ruling on the instant Motion.

of avoided transfers (Count III). *Id.* ¶¶ 27-45. The Defendant's Motion sets forth three arguments for dismissal: (1) that the Complaint fails to allege sufficient facts to establish insider status and to adequately plead insolvency for the extended preference period; (2) that the Trustee failed to conduct appropriate due diligence as required under § 547(b) by failing to consider the Defendant's reasonably knowable defenses; and (3) that the Complaint fails to adequately allege a fraudulent transfer claim.

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 12(b)(6), a party may seek dismissal where the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b). To survive a motion to dismiss, "the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "When evaluating a motion to dismiss, the court must: (1) construe the complaint in a light favorable to the plaintiff, (2) take factual allegations as true, and (3) draw all reasonable inferences in favor of the plaintiff." *City of Fairmont v. Chrisite (In re Comvest Ltd., Inc.)*, No. 10-BK-838, Adv. No. 13-AP-41, 2014 Bankr. LEXIS 5073, at *5, 2014 WL 7330486, at *2 (Bankr. N.D.W. Va. Dec. 18, 2014). "The court's role in ruling on a motion to dismiss is not to weigh the evidence, but to analyze the legal feasibility of the claim." *Id.*, 2014 Bankr. LEXIS 5073, at *5-6, 2014 WL 7330486, at *2.

**DISCUSSION**

**1. Count I – Avoidance of Preferential Transfers.**

The Complaint alleges that the Transfers are avoidable as preferential transfers under § 547. Section 547 defines certain transfers that were made out of the debtor's estate within the pre-petition window as "preferences" and allows a trustee to avoid them. There are five

elements to a § 547(b) claim. A trustee may avoid any transfer of an interest of the debtor in property —

> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
> (A) on or within 90 days before the date of the filing of the petition; or
>
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>
> (A) the case were a case under chapter 7 of this title;
>
> (B) the transfer had not been made; and
>
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

In this case, the Trustee alleges that Bellot is an insider, extending the lookback period from 90 days to one year under § 547(b)(4)(B). Compl. ¶¶ 15-16, 18. For its part, the Defendant contends that the Trustee has not adequately pleaded insider status or insolvency during the extended preference period and that the Trustee failed to consider reasonably knowable defenses, including an ordinary course defense. The Court will take each argument in turn.

**a. The Complaint adequately alleges insider status.**

The Court begins with the Defendant's argument that the Complaint fails to adequately allege insider status. The Bankruptcy Code provides non-exclusive examples of an "insider," including a "director of the debtor," an "officer of the debtor," or a "person in control of

the debtor." 11 U.S.C. § 101(31)(B). "It is well settled that the statutory definition of insider is not exhaustive; rather, an insider may be any person or entity whose relationship with the debtor is sufficiently close so as to subject the relationship to careful scrutiny." *Butler v. David Shaw Inc.*, 72 F.3d 437, 443 (4th Cir. 1996) (cleaned up). Individuals specifically listed in § 101(31) are often referred to as "statutory insiders," while non-listed entities may be found to be "non-statutory insiders." *See, e.g.*, *Hirsch v. Va. Tarricone (In re A. Tarricone, Inc.)*, 286 B.R. 256, 262 (Bankr. S.D.N.Y. 2002). "[T]he question of whether a creditor is an insider of the debtor is primarily a question of fact to be decided at some point after the pleading stage." *Gordon v. Harrison (In re Alpha Protective Servs., Inc.)*, 531 B.R. 889, 901 (Bankr. M.D. Ga. 2015); *see also Three Flint Hill Ltd. P'ship v. Prudential Ins. Co. (In re Three Flint Hill Ltd. P'ship)*, 213 B.R. 292, 298 (D. Md. 1997) ("Courts generally hold . . . that insider status is determined by a factual inquiry into the closeness of the relationship between the parties and whether the transaction between the transferee and debtor was conducted at 'arm's length.'"). At the pleading stage, a complaint need only "raise the possibility that the Defendant was an insider of the debtor at the time of the payments above the speculative level." *Zucker v. Oconee Reg'l Healthcare Found., Inc. (In re Oconee Reg'l Health Sys., Inc.)*, 621 B.R. 64, 78 (Bankr. M.D. Ga. 2020) (cleaned up).

Viewing the allegations in a light favorable to the Trustee and taking all well-pleaded factual allegations as true, the Court finds that the Complaint adequately alleges that Bellot is a statutory insider—namely, an "officer of the debtor" and a "person in control of the debtor." Not only does the Complaint allege that Bellot was referred to in Defendant's communications with the Debtors as "an Officer," it also alleges that Bellot exerted operational control and executive authority. Specifically, the Complaint alleges that Bellot exercised control over bank accounting and payments, including payroll and payments to vendors. Compl. ¶ 12. It also alleges

that Bellot had control over employee compensation, raises, and retention, and that he negotiated with LBC, the primary secured lender. *Id.* ¶ 11. These allegations are sufficient to plead that the Defendant is a statutory insider of the Debtors.

The Defendant makes several arguments as to why Bellot is not a statutory insider, relying primarily on the parties' engagement agreement. *See* Mot., Ex. A (the "Engagement Agreement"). As the Complaint alleges, the Engagement Agreement provided that the Defendant and its personnel were not to be deemed officers, directors, representatives, or insiders of the Debtors. Compl. ¶ 10. The Defendant also contends that Bellot's duties arose from what it refers to as a "consulting engagement" rather than a formal appointment by a board of directors. But neither the labels in the Engagement Agreement nor the way Bellot's duties arose are dispositive. At issue is not whether Bellot complied with the terms of the Engagement Agreement, but rather whether the Complaint alleges facts that plausibly support the inference that Bellot functioned as a statutory insider. *See In re Global Aviation Holdings*, 478 B.R. 142, 148 (Bankr. E.D.N.Y. 2012) (holding that "[t]he label an employer chooses to attach to a position is not dispositive for purposes of insider analysis"); *Smith v. Ruby (In re Pub. Access Technology.Com, Inc.)*, 307 B.R. 500, 506 n.4 (E.D. Va. 2004) ("The Bankruptcy Code itself does not define the term 'officer.' As such, this court finds no basis for proclaiming a rigid rule to determine who qualifies as a corporate officer [b]eyond observing that proof of officer status requires more than just a title, and less than actual control[.]"). The Complaint does so here. It alleges that Bellot was involved in the management of—and exercised control over—the Debtor, such as making personnel decisions, negotiating with LBC, and managing payroll and accounting.

Moreover, the Defendant's argument relies exclusively on cases decided at later stages. *See* Mot. at 9-10 (citing *In re Public Access* and *Butler*). In *In Re Public Access*, the court

reversed the grant of summary judgment and remanded the case to the bankruptcy court "for a factual determination of [the defendant's] officer status during this period by *evidentiary hearing* and/or appropriate, *authenticated submissions* by the parties." 307 B.R. at 506 (emphasis added). Similarly, *Butler* addressed whether the former owner of a business was an insider following a trial. *See* 72 F.3d at 442 n.9 (describing trial testimony). These cases only underscore the factual nature of assessing insider status. As such, the Court finds that the Complaint contains allegations that, taken as true and in a light favorable to the Trustee, support the inference that Bellot acted as an "officer" or "person in control of the debtor" and therefore as a statutory insider.

For similar reasons, the Complaint also adequately alleges that Bellot is a non-statutory insider. This fact-intensive inquiry includes an assessment of "the closeness of the parties, the degree to which the transferee is able to exert control or influence over the debtor, and whether the transactions between the debtor and the defendant were conducted at arm's length." *Ellenberg v. William Goldberg & Co. Inc. (In re Sullivan Haas Coyle, Inc.*), 208 B.R. 239, 244 (Bankr. N.D. Ga. 1997); *see also Lynch v. Winslow (In re Winslow)*, 473 B.R. 94, 101 (E.D.N.C. 2012) ("Non-statutory insider status centers on the closeness of the relationship between the debtor and the employed professional, as well as on whether the challenged transaction was made at arm's length."). As explained above, the Trustee has alleged that Bellot weighed in on employee compensation, raises, and retention, assumed control over bank accounting and payments, and was the main contact for lender negotiations. These allegations show that Bellot had a high degree of control and influence over the Debtor. *Cf. Butler*, 72 F.3d at 443 (concluding that the defendant was not an insider where "[he] did not make personnel decisions, did not handle the payroll or accounts receivable, and was otherwise uninvolved in the management of the business"). These allegations also support an inference of unusual closeness between the parties, calling into question

whether the parties' dealings were at arm's length. Accordingly, the Court finds that the Complaint adequately pleads that Bellot is a non-statutory insider.

In support of its argument regarding non-statutory insider status, the Defendant again relies primarily on a case decided later in the litigation. *See* Mot. at 12-14 (citing *In re Sullivan Haas Coyle*). In *In re Sullivan Haas Coyle*, the court held that the defendant was not a non-statutory insider on cross-motions for summary judgment where discovery established that "the defendants could not sign checks for the debtor, could not hire or fire employees and had no role in production or the operation of the business." 208 B.R. at 246; *see also id.* at 241 ("*Through affidavits and deposition testimony*, counsel have presented many undisputed facts pertinent to the issue of whether Goldberg & Co. and Mr. Goldberg were insiders of the debtor." (emphasis added)). Like *In Re Public Access* and *Butler*, *In re Sullivan Haas Coyle* merely underscores the factual nature of the parties' dispute. Whether or not the facts ultimately establish Bellot as a non-statutory insider is a determination to be made at some point after the pleading stage.

**b. The Complaint adequately alleges insolvency.**

Next, the Defendant argues that the Complaint fails to adequately allege insolvency for the period between 90 days and one year before the petition date. According to the Defendant, "[t]here are no allegations whatsoever regarding the Debtors' insolvency during this expanded period." Mot. at 16. A review of the Complaint indicates otherwise. The Complaint specifically alleges that the Debtors were insolvent at the time of each of the alleged preferential transfers. *See* Compl. ¶ 34 ("Each Transfer was made while the Debtors were insolvent."). To the extent that the Defendant is arguing that the Complaint must plead that the Debtors were insolvent for the entirety of the one-year insider preference period, that argument likewise fails. Section 547(b)(3) only requires insolvency at the time of each transfer. *See, e.g.*, *Robichaux v. Moses H. Cone Mem'l*

*Hosp. Operating Corp. (In re Randolph Hosp., Inc.)*, 644 B.R. 446, 460 (Bankr. M.D.N.C. 2022) ("The avoidance of a preferential transfer under § 547(b) is contingent on the debtor being insolvent *on the date of the transfer*." (emphasis added)). For these reasons, the Court finds that the Complaint adequately pleads insolvency.

**c. The Complaint adequately alleges that the Trustee exercised due diligence and considered affirmative defenses, including an ordinary course defense.**

The Defendant also argues that the Trustee failed to consider reasonably knowable defenses—in particular, an ordinary course of business defense.[4] Section 547(b) provides that the Trustee must conduct "reasonable due diligence" into the "circumstances of the case" and take into account a defendant's "known or reasonably knowable affirmative defenses under subsection (c)." This introductory language was added to the Bankruptcy Code in 2020, and "a split has developed as to whether the provision constitutes a new element of the § 547(b) cause of action or if the absence of due diligence is an affirmative defense that should not be considered at the motion to dismiss stage." *Randolph Hosp.*, 644 B.R. at 462. The Court need not decide this issue, as the Trustee's allegations are sufficient to infer that due diligence has been conducted regardless of whether this provision creates a new element.

The Complaint does more than just recite the introductory sentence of § 547(b). In addition to generally alleging that the Trustee "conducted reasonable due diligence" and took "into

[4] In one sentence and without a citation to authority, the Defendant also references a subsequent new value defense. Mot. at 18; *see* 11 U.S.C. § 547(c)(4). The Court will not consider this perfunctory and undeveloped argument. *See, e.g.*, *Morris v. City of Rockford*, No. 3:20-cv-50384, 2022 U.S. Dist. LEXIS 187306, at *16, 2022 WL 7498364, at *6 (N.D. Ill. Oct. 13, 2022) (declining to consider a one-sentence argument in a motion to dismiss); *Bell v. Colvin*, No. 15-cv-48-bbc, 2015 U.S. Dist. LEXIS 155711, at *20, 2015 WL 7294553, at *6 (W.D. Wis. Nov. 18, 2015) ("As a general rule, a court need not consider perfunctory and undeveloped arguments or arguments that are unsupported by pertinent authority.").

account Defendant's known or reasonably knowable affirmative defenses under section 547(c)," the Complaint also alleges that the Trustee reviewed information provided by the Defendant and evaluated the ordinary course defense. *See* Compl. ¶¶ 22-26. The Complaint further alleges that the Trustee has attempted to locate detailed invoices for the Defendant's services but that "[a]ll invoices located solely contain amounts being charged without any information or details on the time spent, activities, etc." *Id.* ¶ 25. These allegations are sufficient under § 547(b). *See, e.g.*, *Randolph Hosp.*, 644 B.R. at 462 (finding that the plaintiff adequately pleaded due diligence under § 547(b) where the complaint alleged that the trustee "determined he may avoid the subject transfers 'after reviewing his records' and evaluating the reasonably knowable affirmative defenses with due diligence"); *Ctr. City Healthcare, LLC v. McKesson Plasma & Biologics LLC (In re Ctr. City Healthcare, LLC)*, 641 B.R. 793, 802 (Bankr. D. Del. 2022) (finding that the plaintiff adequately pleaded due diligence under § 547(b) where the complaint alleged "that the Debtors conducted an analysis of the Transfers made to the Defendants during the Avoidance Period and whether they were protected from avoidance by any applicable defense").

The Defendant's argument relies on *Miller v. Prestige Patio Co. Ltd. (In re Christmas Tree Shops, LLC)*, No. 23-10576 (TMH), Adv. No. 25-50875 (TMH), 2025 Bankr. LEXIS 3152, 2025 WL 3510820 (Bankr. D. Del. Dec. 5, 2025). *See* Mot. at 17. In that case, unlike here, the complaint "[did] not use the term 'due diligence' or any other language with similar meaning" and contained "no language that plausibly could be understood as alleging that the trustee made any inquiry *at all* into whether there were 'known or reasonably knowable affirmative defenses.'" *Id.*, 2025 Bankr. LEXIS 3152, at *8, 2025 WL 3510820, at *3 (emphasis added). The Trustee's Complaint here contains the precise allegations lacking in *Miller*. *See* Compl. ¶¶ 21-26. As such, even if § 547(b) added "reasonable due diligence" as an element of a

preference claim, the Court concludes that the Trustee has adequately pleaded factual allegations to satisfy it.

The Defendant also asks the Court to dismiss the Complaint based on an ordinary course defense under § 547(c)(2). Section 547(c)(2) provides that "to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee," a trustee may not avoid a transfer "if such transfer was "(A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or (B) made according to ordinary business terms." "The defenses are stated in the alternative in the Code—either the subjective defense (ordinary course between the parties) or the objective defense (according to ordinary business terms) will suffice to avoid liability." *Meiburger v. Reston Hosp. Ctr. (In re Twin Contracting Corp.)*, 582 B.R. 400, 405 n.3 (Bankr. E.D. Va. 2017).

In its Motion, the Defendant relies solely on the subjective prong under § 547(c)(2)(A). *See* Mot. at 20-23. "The subjective inquiry is a peculiarly factual analysis." *KH Funding Co. v. Escobar (In re KH Funding Co.)*, 541 B.R. 308, 314 (Bankr. D. Md. 2015) (cleaned up); *see also Sender v. Pearl Delta Funding, LLC (In re Thunder Ride Inc.)*, No. 25-14589-JGR, Adv. No. 25-01360-JGR, 2026 Bankr. LEXIS 1229, at *22-23, 2026 WL 1362187, at *8 (Bankr. D. Colo. May 14, 2026) (denying motion to dismiss premised on ordinary course defense, noting that "affirmative defenses ordinarily require a developed factual record," and stating that "[t]his limitation is especially important where the asserted defense turns on context, course of dealing, value, intent, timing, or other fact-intensive issues"). Courts typically consider four factors in determining whether a transaction is "ordinary" between the parties:

> (1) the length of time the parties were engaged in the transaction in issue; (2) whether the amount and form of tender differed from past practices; (3) whether the debtor or creditor engaged in any unusual collection or payment activities;

> and (4) whether the creditor took advantage of the debtor's deteriorating financial condition.

*KH Funding*, 541 B.R. at 314 (cleaned up). Because § 547(c)(2)(A) is an affirmative defense, the Defendant bears the burden of proof. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). "It follows, therefore, that a motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense[.]" *Id.* Only "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint" may the defense "be reached by a motion to dismiss filed under Rule 12(b)(6)." *Id.*

This is not one of those rare cases. In support of its ordinary course defense, the Defendant asserts that, apart from one invoice, all of the Transfers during the parties' course of business were made in the same timing and manner (via ACH within three days of invoicing on a weekly billing and payment cycle), consistent with the terms of the Engagement Agreement. Even if this is true, however, "that does not establish an impenetrable defense, as there may be other conduct that could render the payment preferential." *Brandt v. Suntrust Leasing Corp. (In re Equip. Acquisition Res., Inc.)*, No. 09 B 39937, Adv. No. 11 A 02201, 2012 Bankr. LEXIS 6087, at *13-14, 2012 WL 4754949, at *5 (Bankr. N.D. Ill. Sept. 28, 2012) (denying motion to dismiss and rejecting ordinary course defense even though exhibits to the complaint indicated that payments between the debtor and defendant were routinely made in the same form and amount and did not differ from past payments). As the Defendant acknowledges, the Court must also look to the circumstances surrounding the Transfers. *See* Mot. at 22 (citing the factors set forth in *KH Funding*). Similar to *Brandt*, the Defendant argues that the Complaint lacks allegations that it engaged in any unusual collection activities, exercised undue influence over the Debtors, or sought to take advantage of the Debtors' deteriorating financial condition. Mot. at 23; *see Brandt*, 2012

Bankr. LEXIS 6087, at *14, 2012 WL 4754949, at *5. *Brandt* explicitly rejected this argument, concluding that the "[p]laintiff is not required to preemptively plead facts negating the ordinary course defense." *Id.*; *see also Goodman*, 494 F.3d at 466 (holding that a plaintiff need not preemptively plead facts in the complaint in response to a potential affirmative defense). The Defendant's reliance on those additional factors again highlights why dismissal is inappropriate. The ordinary course defense requires a fact-intensive inquiry into the circumstances surrounding the Transfers that goes beyond the timing or method of payment.

And even if the Trustee was required to plead around the Defendant's asserted ordinary course defense, he has adequately done so. The Complaint alleges that the Defendant had control over the Debtors' accounts and payments of invoices and that the Defendant was paid significantly faster than other vendors. Taking these allegations as true and in a light favorable to the Trustee, the Complaint plausibly alleges that the Defendant exerted undue influence over the Debtors and engaged in unusual payment and collection activities that could take the Transfers outside of the ordinary course. Dismissal based on the Defendant's purported ordinary course defense is inappropriate at this stage of the litigation.

**2. Count II – Avoidance of Fraudulent Transfers.**

The Complaint also alleges that the Transfers are avoidable under § 548 as fraudulent transfers. Section 548 provides, in relevant part, that the Trustee may avoid any transfer of an interest of the debtor in property made within two years before the date of the filing of the petition, if the debtor voluntarily or involuntarily

> (B)
>
> (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)

> (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; [or]
>
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

§ 548(a)(1)(B).

The Trustee's Complaint merely recites the elements of a fraudulent transfer claim, without alleging facts that would support such a claim. *See* Compl. ¶¶ 39-40. For example, the Complaint does not contain allegations showing that the Debtors received less than reasonably equivalent value for the Transfers. This is insufficient to state a claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). In his Response, the Trustee appears to request leave to amend the Complaint to allege "more factual detail as to reasonably equivalent value or related elements." Resp. at 19. But the Trustee has not filed a proposed amended complaint; nor have the parties briefed the issue of whether amendment is appropriate. *See, e.g.*, *Preferred Home Inspections, Inc. v. Bellsouth Telecomm.*, LLC, No. 3:14-cv-00673-MBS, 2014 U.S. Dist. LEXIS 134983, at *31 n.10, 2014 WL 4793824, at *11 n.10 (D.S.C. Sept. 24, 2014) (denying request for leave to amend in plaintiffs' response brief because "a motion to amend [was] not before th[e] court"). If the Trustee still wishes to pursue the fraudulent transfer claim, he must file a motion to amend the Complaint and a proposed amended complaint within **fourteen (14) days** of the entry of this Order.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Motion is **DENIED** as to the Trustee's preferential transfer claim under 11 U.S.C. §§ 547 and 550; and it is further

**ORDERED** that the Motion is **GRANTED** as to the fraudulent transfer claim under 11 U.S.C. §§ 548 and 550, which is **DISMISSED without prejudice**. If the Trustee wishes to pursue the fraudulent transfer claim, he must file a motion to amend the Complaint, along with a draft amended complaint, by no later than **fourteen (14) days** after the date of entry of this Order.

**It is so ORDERED.**